25CA0906 Marriage of Bui 08-13-2026

COLORADO COURT OF APPEALS

---

Court of Appeals No. 25CA0906
Jefferson County District Court No. 24DR30846
Honorable Chantel Contiguglia, Judge

---

In re the Marriage of

Phuong Nancy Thi Bui,

Appellee,

and

Lewis Bui,

Appellant.

---

JUDGMENT AFFIRMED IN PART AND REVERSED IN PART,
AND CASE REMANDED WITH DIRECTIONS

Division II
Opinion by JUDGE BROWN
Tow, C.J., and Harris, J., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced August 13, 2026

---

Law Offices of Joel M Pratt, Joel M. Pratt, Colorado Springs, Colorado, for Appellee

Aitken Law, LLC, Sharlene J. Aitken, Denver, Colorado, for Appellant

¶ 1    In this dissolution of marriage case involving Lewis Bui (husband) and Phuong Nancy Thi Bui (wife), husband appeals the portions of the district court's permanent orders concerning the division of marital property, spousal maintenance, and child support.  Husband contends that the district court erred by overvaluing portions of the marital estate in a manner that unfairly benefited wife and incorrectly determining husband's income for purposes of maintenance and child support.  We affirm the court's division of marital property but reverse its determination of husband's income and the related maintenance and child support orders.  We remand the case for further proceedings.

## I.    Background

¶ 2    Husband and wife were married in 2008 and have two children.  Wife petitioned for dissolution of marriage in July 2024.

¶ 3    During the marriage, husband worked 120 hours per month as an emergency medicine physician at HCA Houston.  He also worked at various other hospitals, receiving income as a contract employee.  In addition to the practice of medicine, husband pursued other business ventures, including the formation of Hue

Health Inc., a company selling some type of health insurance product. Husband owned a sixty-five percent stake in Hue Health.

¶ 4    In December 2024, the parties jointly obtained an expert, Shannon Domaille, to determine husband's income and the value of husband's companies. To complete her valuation of Hue Health, Domaille requested that husband produce various financial documents. Husband told Domaille that he was not involved in the company's day-to-day operations and directed Domaille to his business partner, Jake Kerr, for the requested documents. When Domaille contacted Kerr, Kerr was initially unresponsive, but he ultimately replied — seven days after the twice-extended deadline for Domaille's report — that he could not provide Domaille with the requested documents until she signed a nondisclosure agreement. Domaille never received the information she needed to value Hue Health and was unable to complete her report for the parties.

¶ 5    At a discovery hearing to address husband's failure to disclose information, the district court determined that Domaille should complete her valuation of Hue Health from whatever information she was able to obtain. It also sanctioned husband for his nondisclosures, indicating that it would apply an adverse inference

2

regarding the value of Hue Health and preclude husband from testifying concerning any financial documents that remained undisclosed by the date of the permanent orders hearing the following month.

¶ 6 Because of the lack of disclosures, Domaille conducted independent research to value Hue Health. She discovered that Hue Health had received approximately $700,000 from investors, incurred debts from the creation and marketization of a healthcare insurance product, and entered into a contract with Huerfano County to serve as its health insurance provider for an estimated value of $1.3 million per year.

¶ 7 In March 2025, the court held a permanent orders hearing to resolve the parties' financial matters, as the parties had already reached an agreement concerning parenting time and decision-making. As relevant to husband's appeal, the disputes at the permanent orders hearing included the value of Hue Health, husband's dissipation of marital assets, and husband's income.

¶ 8 At the hearing, based on Domaille's independent research into the value of Hue Health, wife contended that husband's interest in the company should be valued at $1,282,872. For his part,

3

husband argued that it would be inequitable for the court to adopt wife's valuation and that his interest in Hue Health should be valued at $325 because the company had not made any revenue.

¶ 9 Wife also provided evidence that husband had dissipated $122,817 in marital funds and asked that the court place the value of the dissipated assets in husband's column on the property spreadsheet. Specifically, wife argued that husband spent $89,479 on vacations and expensive gifts for his new romantic interest and $33,338[1] on a property located on Vispo Way in Broomfield. Husband disputed that his purchase of the Vispo Way property amounted to dissipation because the home was a marital asset, and he denied that any of his other spending had significantly dissipated marital funds.

¶ 10 Finally, concerning husband's income for purposes of maintenance and child support, wife argued that husband failed to disclose what income he received from his contract work with various hospitals and that, in light of husband's nondisclosures,

---

[1] The fact that husband spent $33,338 on the Vispo Way property appears undisputed, but it is unclear from the record how that money was spent — as a down payment or as some other property-related expense.

the court should draw an adverse inference and find that husband earns at least $29,970 per month, a figure similar to what Domaille determined husband had earned in 2024. Husband contended that his work for HCA Houston was considered full-time employment, so the court should calculate his income for the purposes of determining maintenance and child support obligations based on that income alone. Specifically, he argued that any income derived from additional jobs he works beyond his full-time employment, which he did not intend to continue once he no longer had to pay litigation costs, should not be included in his income.

¶ 11 After the hearing, the court entered oral and written permanent orders dividing the marital estate and awarding wife maintenance and child support. As relevant to husband's appeal, the court ruled that (1) husband's interest in Hue Health was worth $1,282,872; (2) husband had "substantially dissipated the marital estate in the amount of at least $122,817"; and (3) husband's monthly income was $29,757. Husband appeals.

## II. Division of Marital Property

¶ 12 Husband contends that the district court erred by (1) overvaluing Hue Health and (2) determining that husband

5

dissipated $122,817 in marital assets. We discern no basis to reverse the property division.

### A. Applicable Law and Standard of Review

¶ 13      The Uniform Dissolution of Marriage Act governs a district court's division of marital property. *In re Marriage of Balanson*, 25 P.3d 28, 35 (Colo. 2001); § 14-10-113, C.R.S. 2025. The court must first determine whether an asset or debt is marital and subject to division or separate and shielded from division. *In re Marriage of Jorgenson*, 143 P.3d 1169, 1171-72 (Colo. App. 2006) (The "[a]llocation of marital debts is in the nature of property division."). Once an asset or debt has been deemed to be marital, the court must value it. *Id.* at 1172; *Balanson*, 25 P.3d at 36. The court "has discretion to choose the property valuation of one party over that of the other or to make its own reasonable determination of value, and such determination will be upheld unless clearly erroneous." *In re Marriage of Page*, 70 P.3d 579, 582-83 (Colo. App. 2003); *see Whiting-Turner Contracting Co. v. Guarantee Co. of N. Am. USA*, 2019 COA 44, ¶ 36 ("A factual finding is clearly erroneous if nothing in the record supports it.").

¶ 14     Because parties to domestic relations cases owe each other and the court a duty of full and honest disclosure, they must disclose all information material to the resolution of the case, including sworn financial affidavits, personal and business income tax returns, business financial statements, and income documentation. C.R.C.P. 16.2(e)(2); *see In re Marriage of Wright*, 2020 COA 11, ¶ 27; JDF 1125, Mandatory Disclosure - Form 35.1 (revised Apr. 2016), https://perma.cc/BB6G-BDXZ. The disclosure requirements of C.R.C.P. 16.2(e) are self-executing, and the parties have a duty to "affirmatively disclose all information" that falls within the rule. C.R.C.P. 16.2(e)(1); *see In re Marriage of Hunt*, 2015 COA 58, ¶¶ 13-14 (the burden of disclosure is on the party in possession of material information). The parties also have a "duty to cooperate with and supply documents and other information requested by any expert" and, if relevant, to "supplement or correct information in the expert's report or summary." C.R.C.P. 16.2(g)(4).

¶ 15     Courts have considerable discretion to impose appropriate sanctions if a party fails to comply with their obligations under C.R.C.P. 16.2. *Wright*, ¶ 27; *see* C.R.C.P. 16.2(e)(5), (j) (authorizing the court to impose sanctions for failure to provide mandatory

disclosures or to comply with any other provision of the rule). We will not disturb a court's sanction absent an abuse of discretion. *Wright,* ¶ 29.

¶ 16    In dividing the marital estate, a court must disregard marital misconduct. *In re Marriage of Smith,* 2024 COA 95, ¶ 75; *see Jorgenson,* 143 P.3d at 1173. However, in "extreme cases," a court may consider a party's economic fault as a factor to ensure the final division of marital property is equitable. *Smith,* ¶ 75. Specifically, "when one spouse [dissipates] the marital estate for an improper or illegitimate purpose in contemplation of the dissolution, the court may take such conduct into account when it allocates the estate." *Id.* Whether a spouse dissipated marital property is a question of fact, and we will not disturb the court's finding unless it has no record support. *Id.* at ¶ 76.

¶ 17    Ultimately, the court must divide the marital property in such proportions as it deems just after considering all relevant factors. § 14-10-113(1). The court has "great latitude to effect an equitable distribution based upon the facts and circumstances of each case." *In re Marriage of Cardona,* 2014 CO 3, ¶ 34 (citation omitted). We review a court's order dividing a marital estate for an abuse of

8

discretion.  *In re Marriage of Medeiros*, 2023 COA 42M, ¶ 28.  A court abuses its discretion when its decision is manifestly arbitrary, unreasonable, or unfair, or if it misapplies the law.  *Id.*

### B.  The District Court Did Not Err in Valuing Hue Health

¶ 18    Husband contends that the district court erred in valuing Hue Health by (1) applying an adverse inference as a sanction for his nondisclosures and (2) adopting wife's proposed valuation.  We discern no error.

¶ 19    Husband does not dispute that he failed to disclose the financial records Domaille required to complete her valuation of Hue Health.  Instead, he contends that the court abused its discretion by drawing an adverse inference as a sanction for his nondisclosure because (1) the court failed to consider the efforts husband made to ensure that Kerr provided Domaille with the needed documentation, and (2) the sanction was disproportionate to the harm caused by his nondisclosure.[2]

---

[2] The court also precluded husband from providing any testimony at the permanent orders hearing related to financial information that had not been disclosed to Domaille.  Husband does not challenge this portion of the court's sanction on appeal, so we do not address it here.

¶ 20    The burden to disclose Hue Health's financial documentation rested squarely on husband's shoulders.  *See* C.R.C.P. 16.2(e); *Hunt*, ¶¶ 13-14.  Kerr was not a party to the case, nor was he obligated to make disclosures under C.R.C.P. 16.2(e)(2) or to cooperate with the expert under C.R.C.P. 16.2(g)(4).  Thus, whether Kerr disclosed documents or cooperated with Domaille's requests for documentation related to the valuation of Hue Health has no bearing on whether husband satisfied his affirmative obligations. The court was not required to excuse husband's noncompliance because his business partner refused to cooperate.

¶ 21    Further, because the disclosure obligations under C.R.C.P. 16.2(e) are self-executing, *see Hunt*, ¶¶ 13-14, we reject outright husband's argument that the court erred by not "consider[ing] whether [w]ife utilized all adequate procedural remedies such as subpoenas or depositions before imposing a harsh sanction."  Wife was under no obligation to pursue "procedural remedies" or discovery to ensure husband's compliance with C.R.C.P. 16.2(e)(2).

¶ 22    At the conclusion of the discovery hearing concerning husband's lack of disclosures, the court made clear that, if husband did not provide the required documentation by the date of

the permanent orders hearing, the court would draw an adverse inference as to the value of Hue Health as a sanction. At the permanent orders hearing, Domaille testified that husband never provided her with the documents she needed to value Hue Health. Because husband failed to disclose the required documentation by the date of the permanent orders hearing, we conclude that the court did not abuse its discretion by imposing a sanction for his violations of C.R.C.P. 16.2(e)(2) and (g)(4). *See Wright*, ¶ 27; C.R.C.P. 16.2(e)(5), (j).

¶ 23    That said, it is not clear to us that the court actually imposed a sanction. True, the court said it was drawing a negative inference against husband when valuing Hue Health, but it did not explain how the negative inference impacted its valuation, if at all. Still, because the parties seem to agree that the court drew a negative inference, we consider that its chosen sanction.

¶ 24    Husband contends that the sanction was disproportionate to the harm, which he characterizes as "not providing documentation on Hue Health to the expert in a timely fashion." But the harm was not simply a tardy disclosure that delayed the expert's valuation opinion; rather, the failure to disclose the necessary information by

the date of the permanent orders hearing meant that the expert was unable to value the business, which was a substantial — if not the most substantial — marital asset. Moreover, drawing an adverse inference is an appropriate sanction when a party fails to make financial disclosures. *In re Marriage of Sgarlatti*, 801 P.2d 18, 19 (Colo. App. 1990) (a court may draw an adverse inference against a party when that party fails to make financial disclosures). And husband does not explain what alternative sanction the court could have ordered to remedy the harm. Thus, we discern no abuse of discretion in the court's chosen sanction. *See Wright*, ¶ 27; C.R.C.P. 16.2(j).

¶ 25 Yet husband contends that, as a result of the negative inference, the court's valuation of Hue Health was "inflated." He argues that the value the court chose "was not based on any contracts reviewed, customer invoices, [or] gross receipts," but instead on Domaille's independent research of publicly available information. Effectively, husband argues that the court's valuation of Hue Health was clearly erroneous because it was not based on credible evidence. We are not persuaded.

¶ 26    When determining the value of marital property, the court has discretion to choose one party's proposed value over the other's or to determine its own reasonable value, so long as the value has record support.  *See Page*, 70 P.3d at 582-83; *Medeiros*, ¶ 41.  Here, the court adopted wife's proposed value, which was based on the information Domaille collected and is supported by record evidence.

¶ 27    At the permanent orders hearing, Domaille testified that, although she did not receive the information she requested to complete her valuation of Hue Health, she did not believe that the business was without value.  She indicated that the company "could be" worth at least $1.3 million based on the contract she discovered it had executed with Huerfano County.  The court admitted Domaille's affidavit, which attested to the information she had discovered from publicly available sources about Hue Health.

¶ 28    Wife based her proposed valuation on the information Domaille discovered during her independent research — namely, that Hue Health has the $1.3 million Huerfano County contract and that the company "has at least $150,750 in cash accounts[] [and] has either invested in or been given approximately $522,900 by hedge funds."  Accordingly, wife argued that husband's sixty-five

13

percent interest in Hue Health should be valued at $1,282,872 (0.65 x ($1,300,000 + $150,750 + $522,900) = $1,282,872).

¶ 29     In adopting wife's proposed valuation of Hue Health, the court noted that it was persuaded by Domaille's credible testimony at the permanent orders hearing as well as wife's exhibit detailing Domaille's independent research into the value of the company. *See In re Marriage of Farr*, 228 P.3d 267, 270 (Colo. App. 2010) (it is the trial court's role to determine the credibility of witnesses and to resolve conflicting evidence).  And because husband failed to timely disclose documents detailing Hue Health's financial status, the court had no competing evidence to consider.  *See In re Marriage of Rodrick*, 176 P.3d 806, 815 (Colo. App. 2007) (the parties are responsible for presenting the court with the data needed to value marital property).  In the end, because the court's valuation of Hue Health is supported by credible evidence in the record, we will not disturb it on appeal.  *See Page*, 70 P.3d at 582-83.

C.     Any Error by the District Court in Calculating Husband's Dissipation of Marital Funds Does Not Require Reversal

¶ 30     Husband contends that the district court erred by determining that he had dissipated marital funds in the amount of at least

14

$122,217.  As best we understand, husband does not challenge the court's determination that he dissipated marital funds; instead, he argues that the court erred by charging him with 100 percent of the expenditures listed in wife's exhibit and by inappropriately double counting his expenditure on the Vispo Way property.  We discern no reversible error.

¶ 31    At the permanent orders hearing, wife offered, and the court admitted into evidence, a spreadsheet containing a list of expenditures husband made between October 2024 and February 2025.  The expenditures included various travel expenses, miscellaneous goods and services, and money transfers to husband's new love interest.  It was wife's position that she did not consent to these expenditures, which totaled $89,479.40.  Wife also asked the court to find that husband dissipated $33,338 in marital assets when he purchased the Vispo Way property after she filed for divorce.  Added together, wife argued that husband dissipated $122,817.  On cross examination, however, wife conceded that some of the expenditures included in her spreadsheet were either trips that she took or trips that husband took for work.

¶ 32    In its permanent orders, the court explained that it was persuaded by wife's "credible testimony" and the exhibit she prepared reflecting husband's alleged dissipation. Although the court acknowledged that "there was some dispute as to some of the vacations," it reasoned that the amount of husband's dissipation was "likely to be a higher amount because of the lack of disclosures that [husband] admitted to in testimony." In the end, the court determined that husband had dissipated $122,817 in marital funds during the dissolution proceeding and credited that amount to husband as an asset in its division of marital property.

¶ 33    Husband contends that the court erred by allocating 100 percent of the expenditures on wife's spreadsheet to him as dissipated marital assets. Specifically, husband argues that the court made "insufficient findings . . . to account for the legitimate business or family expenses that were improperly included in [w]ife's spreadsheet."

¶ 34    Even assuming the court erred as husband contends, we conclude that husband has failed to demonstrate that any error requires reversal. *See* C.A.R. 35(c) (a court may disregard any error or defect not affecting the substantial rights of the parties); *see also*

16

*Curry v. Brewer*, 2025 COA 28, ¶ 54 (the party asserting the error on appeal has the burden of showing that it requires reversal). Husband does not identify which expenditures should not have been charged to him. Consequently, we have no basis by which to determine whether the alleged error affected husband's substantial rights. *See Balanson*, 25 P.3d at 36 (a court's error in the division of marital property division is reversible only when the aggregate effect of the errors affects the parties' substantial rights).

¶ 35 Husband also challenges the court's determination that he dissipated marital assets by purchasing the Vispo Way property. Husband argues that the court double counted this expenditure by both (1) including $33,338 in the total of dissipated marital funds allocated to him as an asset on the property division spreadsheet and (2) allocating the property — the value of which included the initial $33,338 investment — to him.

¶ 36 We agree that the court erred by allocating $33,338 of the value of the Vispo Way property to husband twice — once as part of an asset reflecting the value of husband's dissipation and again as part of the value of the Vispo Way property allocated to husband. *See Cardona*, ¶ 38 (Boatright, J., concurring in the judgment)

17

(a court cannot equitably distribute property if it is counted twice). But the court's error in double counting the Vispo Way property amounted to only $33,338 in misallocated marital assets. When we consider the purported error in relation to the roughly $2.8 million marital estate, it makes up approximately one percent. Because the court's error affects only a small percentage of the marital estate, we conclude that the error is harmless and does not require reversal. *See Balanson*, 25 P.3d at 36-38 (reasoning that an error affecting only a small percentage of the overall marital estate may be deemed harmless and suggesting that errors affecting less than two percent of the marital estate are harmless, while errors affecting over twenty percent are not); *In re Marriage of Powell*, 220 P.3d 952, 957, 959 (Colo. App. 2009) (upholding the district court's refusal to use an expert's valuation of property that would have increased the marital estate by only six percent, in part because it did not materially impact the property division).

## III. Husband's Income

¶ 37 Husband contends that the district court misapplied the law when calculating his income by including wages he earned from working more than full-time. We agree.

18

### A. Applicable Law and Standard of Review

¶ 38      A district court must determine the parties' gross incomes before calculating maintenance and child support obligations. § 14-10-114(3)(a)(I)(A), C.R.S. 2025 (maintenance); § 14-10-115(1)(b)(1), (5)(a), C.R.S. 2025 (child support); *In re Marriage of Tooker*, 2019 COA 83, ¶ 13. "Gross income" generally includes income from any source except, as relevant here, "[i]ncome from additional jobs that result in the employment of the obligor more than forty hours per week or more than what would otherwise be considered to be full-time employment." § 14-10-114(8)(c)(I), (II)(C); *see* § 14-10-115(5)(a)(I), (II)(C).

¶ 39      We review a court's orders on maintenance and child support for an abuse of discretion. *In re Marriage of Collins*, 2023 COA 116M, ¶ 37 (reviewing child support orders for an abuse of discretion); *Medeiros*, ¶ 58 (reviewing maintenance order for an abuse of discretion). But we will not disturb a court's factual findings related to a party's income unless they are clearly erroneous and unsupported by the record. *In re Marriage of Schaefer*, 2022 COA 112, ¶ 8. And we review de novo whether the court applied the correct legal standard. *Tooker*, ¶ 12.

### B. The District Court Erred by Including Income from Sources Beyond Husband's Full-Time Employment

¶ 40     Husband contends that the district court erred by including income he earned from sources other than HCA Houston in its calculation of his gross income for purposes of maintenance and child support. He argues that his work as an emergency medicine physician for HCA Houston is considered full-time employment and that any income he earns from additional contract work should have been excluded from his gross income pursuant to sections 14-10-114(8)(c)(II)(C) and 14-10-115(5)(a)(II)(C). We agree.

¶ 41     Domaille was retained as a joint expert to analyze husband's income. Domaille testified at the permanent orders hearing, and the court admitted her report concerning husband's income into evidence. In the report, Domaille explained that husband "is an employee of HCA Houston" and that, per his contract with the hospital, he "works 120 hours per month and is considered a full-time employee." Domaille also noted that husband works "as an [emergency] [p]hysician for numerous other providers and receives income as a . . . contractor." Domaille determined that in 2024, husband earned an average of $23,272 per month from his

full-time work for HCA Houston, $3,808 per month from contract work, $2,500 per month in consulting fees from Hue Health, and $177 per month from investment dividend and interest payments.[3] Accordingly, Domaille reported that husband's total monthly income in the year 2024 was $29,757 per month.

¶ 42    In his sworn financial statement, husband attested that his monthly income for purposes of maintenance and child support was $25,422, the average of his monthly income from 2022, 2023, and 2024, as determined by Domaille.[4]  In its oral ruling, the court initially noted that the income husband reported in his sworn financial statement was "based upon his full[-]time employment since completing medical school."  But later the court explained that it did not find that figure credible because the sworn financial statement "represents [husband] working [forty] hours per week;

---

[3] Husband does not appear to challenge the court's inclusion of income derived from consulting for Hue Health in its determination of his gross income.  Notably, husband testified at the permanent orders hearing that he was not involved in the "day-to-day" operations of Hue Health, so we cannot determine whether this income was earned passively or from husband working beyond what would be considered full-time employment.

[4] Notably, this average derived from Domaille's report included husband's income from contract work.

yet . . . [husband's] testimony was that he worked the industry standard at 120 hours for his employment as an ER physician."

¶ 43     Ultimately, the court was "more persuaded" by Domaille's analysis and found that husband's gross income for purposes of maintenance and child support was $29,757 per month. Critically, that figure included income from husband's employment for HCA Houston as well as income from his additional contract work for other hospitals. But Domaille testified, and her report confirms, that husband's employment with HCA Houston was considered full-time employment. Although the court certainly was not bound by Domaille's opinion, it made no contrary finding. Because a party's gross income under sections 14-10-114(8)(c)(II)(C) and 14-10-115(5)(a)(II)(C) excludes any income earned from employment beyond "what would otherwise be considered to be full-time employment," the court abused its discretion by including husband's contract income in its calculation of his gross income. *See In re Marriage of Salby*, 126 P.3d 291, 300 (Colo. App. 2005) (because the father's consulting work constituted a "second" job in addition to his full-time employment, those earnings should not

22

have been included in his gross income for purposes of determining child support).

¶ 44   We are not persuaded otherwise by wife's argument that the court's income figure was appropriate based on the adverse inference the court drew from husband's nondisclosures and lack of credibility. True, the court expressed concerns about husband's credibility and his failure to disclose pertinent financial information and indicated that it would draw an adverse inference against him, but it did not explain how such an adverse inference affected its income calculation. Instead, it simply adopted the expert's calculation, which included income prohibited by statute. *See* § 14-10-114(8)(c)(I), (II)(C); § 14-10-115(5)(a)(I), (II)(C). Absent another explanation, it appears that the court misapplied the law when calculating husband's gross monthly income. *See In re Marriage of Krieger*, 2026 COA 23, ¶¶ 14, 31 (a court abuses its discretion when it misapplies the law).

¶ 45   The income husband earned from contract work in 2024 — $3,808 per month — amounts to almost thirteen percent of the court's gross income finding — $29,757. But we note that the court's child support worksheet appears to include another error

23

that compounds the income miscalculation.  *See* C.A.R. 1(d) ("[T]he court may, in its discretion, notice any error appearing of record."). Although the court added the amount of maintenance it awarded — $7,500 — to wife's monthly gross income for purposes of computing child support, it neglected to subtract that amount from husband's monthly gross income.  As a result, husband's income for purposes of computing child support was overstated by $11,308 — nearly forty percent of the court's gross income finding — skewing husband's child support obligation.  We conclude that this combination of errors requires a remedy.  *See* C.A.R. 35(c); *see also In re Marriage of Aragon*, 2019 COA 76, ¶ 33 (the court's determination of gross income was reversible error because it incorrectly allocated husband's worker's compensation settlement, substantially inflating husband's gross income for purposes of maintenance and child support); *cf. Balanson*, 25 P.3d at 36-38 (reasoning that an error affecting only a small percentage of the overall marital estate may be deemed harmless, while errors affecting over twenty percent are not).

¶ 46      Thus, we reverse and remand for the court to recalculate the parties' incomes and reconsider its maintenance and child support

orders. Because maintenance is based on the parties' financial circumstances at the time the order is entered, *Wright*, ¶ 24, and because child support is based on the parties' respective incomes after accounting for maintenance, § 14-10-115(3)(a)(I); *In re Marriage of Foss*, 30 P.3d 850, 853 (Colo. App. 2001), the parties must be given an opportunity to present evidence of their current financial circumstances, and the court must consider that evidence when entering new maintenance and child support orders.

## IV. Appellate Attorney Fees

¶ 47    Wife requests an award of appellate attorney fees under section 14-10-119, C.R.S. 2025, based on husband's greater financial resources. *See In re Marriage of Gutfreund*, 148 P.3d 136, 141 (Colo. 2006). Because the district court is better equipped to determine the appropriateness of an award of attorney fees based on the parties' current financial resources, we exercise our discretion to remand this issue to the district court. *See* C.A.R. 39.1; *In re Marriage of Alvis*, 2019 COA 97, ¶ 30.

## V. Disposition

¶ 48    We affirm the district court's judgment as it relates to the division of marital property but reverse the judgment as it relates to

maintenance and child support. We remand the case to the district court to conduct further proceedings consistent with this opinion and to consider wife's request for appellate attorney fees.

CHIEF JUDGE TOW and JUDGE HARRIS concur.